McKinney, J.,
delivered the opinion of the Court.
This hill was brought on the 6th of August, 1855, by the complainant as administrator to the estate of Sarah Wade, deceased, to recover from the defendant Weatherly certain slaves in his possession, fraudulently conveyed by his intestate in her lifetime, to the end that said slaves might be subjected to the payment of debts alleged to be due from the estate of the intestate.
It appears that on the 8th of April, 1848, the intestate, Sarah Wade, conveyed the slaves Jane and her child Charles to the defendant McKay; and since the date of said conveyance, Jane has given birth to several other children, all of whom are now in the possession of and are claimed by the defendant Weatherly as his absolute property.
The object of the conveyance by Sarah Wade is shown to have been to avoid the payment of a debt sent from Virginia for collection, for which she was liable as a surety, but which she alleged to be unjust. The conveyance of the slaves to McKay was upon a distinct agreement that the slaves should be secured to Mary Wade, the daughter and only child of said Sarah.
Soon after the conveyance, Sarah Wade died intestate, and no administration was granted on her estate until the day on which the present bill was filed, 6th •of August, 1855, a period of nearly twelve years from her death.
Some time after the death of Sarah Wade, and prior to the 1st of January, 1845, the defendant McKay, in pursuance of the agreement with her, conveyed and delivered the slaves to Mary Wade; and in December, *288 1847, said Mary intermarried with the defendant Wea-therly, who took the slaves into his possession, and has held them ever since, claiming them as his own against all others.
The hill alleges that the intestate was in debt at the time of her death, and that the claims of her creditors still remain unpaid', and she left no assets other than said slaves; hut no creditor is named nor is any debt specified in the bill-
The complainant took out letters of administration on the estate of said Sarah Wade, and on the same day brought this hill, for the sole purpose of testing the title of the defendant Weatherly to the before - mentioned slaves.
The relief sought by the bill is resisted' on several grounds, one of which only need be noticed.
It is said that the complainant cannot be heard to allege the fraud of his intestate in avoidance of the conveyance made by her. This principle is unquestionably correct, except so far as it has been modified by the .act of 1852, ch. 288, regulating the administration of insolvent estates. By the 48th section of the statute it is enacted that “an executor or administrator shall have the power, as a representative of the creditors of an insolvent estate, to file a bill to set aside a fraudulent conveyance of real, personal, or mixed estate; and when such conveyance is set aside, the assets recovered shall be distributed pro rata among the creditors,” etc.
The rule of the common law, that the personal representative is bound by the acts of his testator or intestate, and cannot therefore impeach his conveyance on the ground of fraud, is not altered, nor was it intended to *289 be, by the foregoing section, except in respect to “insolvent estates,” for whose administration the statute provides. By this enactment, the executor or administrator of an insolvent estate is made the representative of the creditors of the estate, to the extent that he may bring a bill in equity for their' benefit to set aside a fraudulent conveyance made by the testator or intestate to the prejudice of creditors. Thus far only the relations of the personal representative to the estate are changed. And to this extent his attitude may perhaps be considered as in some degree antagonistic to the estate he represents. In bringing such suit, he is not acting in the proper capacity of representative of the estate, but rather in the new and different capacity of the representative of creditors.
But to maintain such a suit, the bill must show upon its face that the estate is insolvent, as contemplated by the act of 1852. In the record before us, no such casé-is made in the bill. It does not appear that any suggestion of insolvency was ever made, as required by the 4th section of the act; and this is the. mode in which the fact of insolvency is required, in the first instance, to be made known by the executor or administrator of the estate.
But a more important objection is, that it does not appear anywhere in the bill that any Iona fide debts exist against the estate of the intestate. The bill does not upon its face purport to be brought by the complainant as the representative, or for the benefit, of creditors of the estate; and from the whole case, there is strong ground of suspicion that the procurement of letters of administration, and the filing of this bill, was *290 a concerted fraud for the personal ■ benefit. óf ' the', complainant. It can scarcely he believed that ‘ if any Iona fide debts had remained due from ■ the intestate at her death, her creditors, possessing full knowledge of all the facts respecting the fraudulent nature of* the transfer of said slaves, would have slumbered 'upon ' their ' rights,- and acquiesced therein for the period of twelve years after her death.
In no aspect of the case, therefore, can. this bill be maintained by the complainant: .not. as representative of the estate of his intestate, for in that capacity he is estopped by her conveyance to the defendant McKay; - nor as the representative of creditors, for, as has been shown, he neither sues in that character, nor does the bill make a case within the statute entitling him to sue in behalf of creditors.
The decree dismissing the bill is affirmed with costs.